```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>**Plaintiff**<br><br>v.<br><br>TONY ROSARIO-POLANCO<br><br>**Defendant** | **CRIMINAL NO. 23-264 (RAM)** |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Defendant Tony Rosario-Polanco's ("Mr. Rosario" or "Defendant") *Motion to Reopen Bail Hearing* (Docket No. 21). For the reasons explained below, Defendant shall remain detained awaiting trial.

### I.   BACKGROUND

Per the Affidavit in Support of Criminal Complaint by Border Patrol Agent Luis Polo (the "Affidavit"), on June 26, 2023, a United States Customs and Border Protection ("CBP") Air Asset detected a small vessel approximately 80 nautical miles northwest of Aguadilla, Puerto Rico. (Docket No. 1-1 ¶ 4). The vessel was heading towards Puerto Rico with approximately 23 persons and visible packages onboard. Id. ¶¶ 5-6. The United States Coast Guard ("USCG") was notified and subsequently intercepted the vessel. Id. ¶¶ 7-8. A total of 25 individuals, including Mr. Rosario, were found onboard

the vessel. Id. ¶¶ 10-11. All of their fingerprints were entered into the biometrics system. Id. ¶ 14. This biometric review revealed that Defendant had a history of immigration infractions and criminal charges. Id. ¶ 16.

On July 5, 2023, a criminal complaint was filed charging Mr. Rosario with violating 8 U.S.C. § 1326(a), Reentry of Removed Aliens. (Docket No. 1). On July 12, 2023, a Grand Jury returned a one-count indictment against Mr. Rosario and charged him with Re-entry of Removed Alien in violation of 8 U.S.C. § 1326(a). (Docket No. 8).

A detention hearing was held before United States Magistrate Judge Marshal Morgan on July 20 and August 4, 2023. (Docket Nos. 11 and 15). Magistrate Judge Morgan ultimately ordered that Defendant be detained pending trial because he posed a risk of flight based on the following findings: (1) the weight of evidence against Defendant is strong; (2) subject to lengthy period of incarceration; (3) prior criminal history; (4) participation in criminal activity while on probation, parole or supervision; (5) significant family or other ties outside of the United States; (6) lack of legal status in the United States; (7) subject to removal or deportation after serving any period of incarceration; (8) use of aliases or false documents; and (9) prior violations of parole or supervised release. (Docket No. 16). Mr. Rosario's *Motion to Reopen Bail Hearing* ensued. (Docket No. 21).

The Court held a *de novo* hearing on October 3, 2023. (Docket No. 25). Defendant proposed Edwin Sosa-Rodriguez ("Mr. Sosa") as third-party custodian coupled with a curfew and electronic monitoring as conditions of release. The Court conducted an examination of Mr. Sosa-Rodriguez that revealed that he only knew Defendant briefly when Defendant lived with his sister in 2011-2012. (Docket No. 25). On their part, the Government asserted that it was seeking detention for risk of flight and highlighted: (a) the weight of evidence against Mr. Rosario; (b) his history of illegal reentry and charges of domestic violence; (c) his significant ties to the Dominican Republic; and (d) the fact that he is subject to removal and deportation.

## II. LEGAL STANDARD

**A. Standard of review for a detention or release order:**

A district court reviews a Magistrate Judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." *See* United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014). A district court may also "take additional evidence or conduct a new evidentiary hearing when the defendant has placed relevant facts at issue." Id.

**B. The Bail Reform Act:**

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an

offense shall be detained or released. *See* 18 U.S.C. § 3141(a). Section 3142(e) of the Act provides that ultimately, if after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, he shall order the detention of the person prior to trial."

Section 3142(f) of the Act establishes the instances in which an accused individual is eligible for detention and therefore a detention hearing is proper. *See* 18 U.S.C. § 3142(f). Specifically, Section 3142(f)(1)(a) of the Act requires that the judicial officer shall hold a detention hearing upon motion of the attorney for the Government in cases that involve "a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(a). Likewise, Section 3142(f)(2) authorizes the court to hold a detention hearing upon government motion or *sua sponte* in cases that involve "a serious risk that such person will flee" **or** "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The standard of proof for detention due to dangerousness is clear and convincing evidence. Id. **In turn, the**

**standard of proof for detention due to risk of flight is preponderance of the evidence.** See United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

When determining whether there are conditions of release to assure the defendant's appearance and the safety of the community during a detention hearing, judicial officers must take into consideration the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

Under the Act, a decision to detain must be supported by written findings of fact and a statement of reasons and is immediately reviewable. See 18 U.S.C. § 3142(i).

### III. DISCUSSION

**A. An analysis of the Section 3142(g) factors indicates that detention pending trial is proper**

**1. The nature and circumstances of the offense charged:**

Mr. Rosario was indicted with one count of Re-entry of Removed Alien in violation of 8 U.S.C. § 1326(a). (Docket No. 8). This offense carries maximum sentences of two (2) years of imprisonment. See 8 U.S.C. § 1326(a). Although the severity of the conduct does not tip the balance towards detention, by the nature of the

offense, Defendant is simultaneously subject to pending immigration proceedings that may result in removal or deportation. Therefore, this aspect of the offense charged favors detention.

**2. The weight of the evidence against the Defendant:**

The weight of the evidence against the Defendant is strong. Namely, per the Affidavit, Defendant was found on a vessel heading towards Puerto Rico with 24 other individuals, all citizens of the Dominican Republic, and the biometrics review revealed his history of improper entry into the United States. (Docket No. 1-1 ¶¶ 10-11, 14-16). Moreover, Mr. Rosario does not have any immigration documents allowing him to legally enter or remain in the United States, nor does he have any pending petitions with the Bureau of Citizenship & Immigration Services. Id. ¶¶ 24-25. "[N]umerous courts have recognized that the seriousness of the charge and the weight of the evidence can create a strong incentive for a defendant's flight." United States v. Rodriguez-Adorno, 606 F. Supp. 2d 232, 236 (D.P.R. 2009).

**3. The history and characteristics of the Defendant:**

Mr. Rosario is a 37-year-old male, in good health, with no known history of substance abuse. He is a citizen of the Dominican Republic with an eighth-grade education who has been employed for the past year but previously reported working in construction. Defendant identifies as a lifelong resident of the Dominican Republic, although he lived in San Juan, Puerto Rico with his

former consensual partner, Ms. Roselys Díaz-Reynes, until he was last deported in 2020. He was born in San Francisco de Macoris, Dominican Republic, where he, his parents, five of his six siblings, and two of his three children all reside. He has reportedly only travelled between Puerto Rico and the Dominican Republic. Mr. Rosario is a native Spanish speaker with no fluency in the English language.

Defendant's criminal record reflects that he has been previously convicted of improper entry by alien in violation of 8 U.S.C. § 1325(a). Additionally, the record reflects that between 2019 and 2020, Mr. Rosario was also charged with: (1) Possession and use of a bladed weapon in violation of Article 5.05 of the Puerto Rico Weapons Law; (2) Mistreatment in Violation of Article 3.1 of the Puerto Rico Domestic Violence Law 54 ("Law 54"); (3) Threats in violation of Article 3.3 of Law 54; (4) Re-entry of a Deported Alien in violation of 8 U.S.C. § 1326(a); and (5) Aggravated Abuse committed in the presence of minors in violation of Article 3.2 of Law 54. However, all of these charges were dismissed and are irrelevant to determining whether Defendant is a flight risk.

Mr. Rosario's alienage, standing alone, is not inherently probative of a serious risk of flight nor is it a factor that "tip[s] the balance either for or against detention." United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). Instead, the

fundamental question is what ties Defendant has with the United States in general, and with Puerto Rico in particular. When tasked with assessing an alien defendant's ties to the United States, courts should consider the following factors: "how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has any relatives who are United States residents or citizens." U.S. v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990).

Defendant does not own any property in Puerto Rico. Moreover, his only relatives in Puerto Rico are his 4-year-old daughter and former consensual partner. One of his siblings, Heriberto Rosario-Polanco, reportedly resides in the mainland United States. The record does not reflect that Mr. Rosario was employed in Puerto Rico. In light of these facts, the Court finds that Mr. Rosario lacks meaningful ties to Puerto Rico. Therefore, this factor favors detention.

### B. No set of conditions that will reasonably assure the appearance of the person as required

Mr. Rosario has offered the following conditions: (1) Mr. Sosa as a third-party custodian; (2) a curfew; and (3) electronic monitoring, which Mr. Sosa's residence is allegedly equipped for. The Court is of the view that these conditions are insufficient to assure his appearance at trial for the following reasons.

<u>First</u>, Mr. Rosario is a non-resident alien whose family and strong community ties are in the Dominican Republic. Moreover, Mr. Sosa, the proposed third-party custodian, only knew Defendant briefly in 2011-2012 when Mr. Rosario lived with his sister in Puerto Rico. Per Mr. Sosa's testimony, he "didn't have much to do with [Mr. Rosario]" and only saw Defendant "sporadically," in the afternoons after working, over the course of several months. Mr. Rosario has **no** property, employment, or strong community ties in Puerto Rico and only has weak ties to the few relatives he has in Puerto Rico and the United States.

<u>Second</u>, Defendant is subject to deportation. Immigration authorities, *i.e.*, the Immigration and Customs Enforcement ("ICE"), **are not bound to stay deportation in deference to this judicial proceeding**. *See* <u>United States v. Vasquez-Benitez</u>, 919 F.3d 546 (D.C. 2019) ("ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial"). Although ICE may temporarily decline to deport an individual during criminal proceedings, district courts cannot order ICE to do so. *See* <u>United States v. Veloz-Alonso</u>, 910 F.3d 266, 268-270 (6th Cir. 2019). As noted by the U.S. District Court for the District of Massachusetts, "it is perhaps an unusual situation where the U.S. Attorney's Office, having indicted a defendant, runs the risk that he will be removed by ICE before the

conclusion of their prosecution […] [s]uch scenario, however, is not barred by the BRA [Bail Reform Act] or any intersection with the INA [Immigration and Naturalization Act]." United States of America v. Waad Alzarei, 2019 WL 2642824, at *3 (D. Mass. 2019).

If deported, Mr. Rosario may very well choose **not** to return to face the charges in this case.

### IV.  CONCLUSION

The Court finds that no set of conditions will reasonably assure Mr. Rosario's appearance as required considering: (a) Defendant's status as a non-resident alien who may be deported to his home country by immigration authorities; (b) his lack of property, family and community ties in Puerto Rico; and (c) the weight of the evidence against him.

Pursuant to the above, Defendant Tony Rosario-Polanco **SHALL REMAIN DETAINED PENDING TRIAL**.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 20th day of October 2023.

                                    S/ RAÚL M. ARIAS-MARXUACH
                                    United States District Judge