```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>TONY ROSARIO-POLANCO,<br><br>**Defendant.** | CRIM. NO. 23-264 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Tony Rosario-Polanco's ("Rosario-Polanco" or "Defendant") *Motion to Suppress* ("*Motion*"). (Docket No. 23). For the reasons set forth below, the Court **DENIES** Defendant's *Motion*.

### I. BACKGROUND

**A. Relevant Facts[1]**

On June 26, 2023, a United States Customs and Border Protection ("CBP") aircraft spotted a white *yola*[2] (the "vessel") about eighty nautical miles northwest of Puerto Rico. (Docket Nos. 23 at 1 and 27 at 2). The vessel appeared to have approximately twenty-three people onboard and was heading towards Puerto Rico.

---

[1] The following facts are derived from Defendant's *Motion*, (Docket No. 23), undisputed portions of the Government's *Memorandum of Law in Opposition to the Defendant's Motion to Suppress*, (Docket No. 27), and undisputed portions of the *Affidavit in Support of Criminal Complaint*. (Docket No. 1-1).

[2] A *yola* is a "a small open skiff propelled by oars or an outboard motor." United States v. Trinidad, 839 F.3d 112, 120 (1st Cir. 2016) (Torruella, J., dissenting).

(Docket Nos. 23 at 1-2 and 27 at 2). CBP could also see several white packages onboard. (Docket Nos. 1-1 at 3; 23 at 1-2 and 27 at 2).

A United States Coast Guard ("USCG") cutter intercepted the vessel, and a total of twenty-five people, including Rosario-Polanco, were found onboard. (Docket Nos. 23 at 2 and 27 at 2). All claimed to be migrants from the Dominican Republic without documentation for legal entry into the United States. Id. The subjects were transferred from the vessel to the USCG cutter where their biometrics were taken. Id. Defendant's biometrics showed he had immigration and criminal history in the United States. Id. The USCG transferred Defendant to CBP, which arrested him. (Docket No. 27 at 2).

B. **Procedural History**

On July 12, 2023, a grand jury indicted Rosario-Polanco on one count of re-entry as a removed alien, in violation of 8 U.S.C. § 1326(a). (Docket No. 8).

Defendant filed his *Motion* on October 3, 2023. (Docket No. 23). He moves to suppress his "admission that he 'claimed to be undocumented migrants [sic] from the Dominican Republic' discovered during boarding." Id. at 2 (quoting Docket No. 1-1 at 3). Defendant argues the search and seizure of his vessel, during which his admission was "discovered," violated domestic and

international law and therefore also the Fourth Amendment. <u>Id.</u> at 3-4.

The United States of America (the "Government") opposed Defendant's *Motion* on October 17, 2023 ("*Opposition*"). (Docket No. 27). The Government contends the boarding of Defendant's vessel was proper because, among other reasons, the vessel lacked indicia of nationality. <u>Id.</u> at 6. It argues that Defendant's vessel was stateless at the time of its interception, making the USCG's boarding of it lawful. <u>Id.</u> at 8.

Defendant replied on November 5, 2023. (Docket No. 31). In doing so, he asserts that the Government cannot support its claim that his vessel lacked indicia of nationality. <u>Id.</u> ¶¶ 5-6. Further, Defendant attaches an affidavit and requests a hearing on this *Motion*. <u>Id.</u> ¶¶ 3, 8.

## II.  LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule makes the Fourth Amendment enforceable by prohibiting the fruits of an unreasonable search or seizure from being admitted at trial. <u>United States v. Camacho</u>, 661 F.3d 718, 724 (1st Cir. 2011); *see also* <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-85 (1963) (discussing the "fruits" of unreasonable searches and seizures). When a defendant moves to

suppress evidence under the Fourth Amendment, he has the burden of showing his Fourth Amendment rights were violated. United States v. Rheault, 561 F.3d 55, 58-59 (1st Cir. 2009) (citing Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)).

A violation of domestic or international law does not necessarily entail a violation of the Fourth Amendment. The exclusionary rule protects against **constitutional** violations, not against unauthorized action generally. United States v. Hensel, 699 F.2d 18, 29 (1st Cir. 1983); *see also* United States v. Caceres, 440 U.S. 741, 754-55 (1979). Thus, government action may violate a federal statute without violating the Constitution. Hensel, 699 F.2d at 29. By the same token, the exclusionary rule does not apply automatically to violations of international law. Id. at 30. Rather, the violation of a domestic or international law implicates the Fourth Amendment only if the violation simultaneously contravenes a person's Fourth Amendment privacy interests. Id.

### III. DISCUSSION

Rosario-Polanco contends the boarding of his vessel was unreasonable under the Fourth Amendment because it violated domestic and international law. (Docket No. 23 at 4). He posits that because the boarding violated the Fourth Amendment, its fruit, *i.e.*, his admission about being an undocumented migrant, should be

Criminal No. 23-264 (RAM)                                                  5

suppressed. Id. He also requests an evidentiary hearing be held. (Docket No. 31 ¶ 3). The Court addresses these issues as follows.

### A. Request for an Evidentiary Hearing

There is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013). The decision to hold a hearing is left to the court's discretion. *See* United States v. Flete-Garcia, 925 F.3d 17, 34 (1st Cir. 2019), *cert. denied*, 140 S. Ct. 388 (2019). It must be held only when a movant "makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Gordon, 871 F.3d 35, 50 (1st Cir. 2017) (quotation omitted). The movant must show that these factual disputes, "if resolved in his favor, would entitle him to the requested relief." Id. at 50 (quotation omitted).

Here, Defendant disputes some of the Government's factual allegations, including the accuracy of the photos attached to the Government's *Opposition*. (*See*, *e.g.*, Docket No. 31 ¶¶ 6-8). However, there are enough undisputed material facts in the record for the Court to decide the *Motion* without a hearing. Defendant's request for an evidentiary hearing on this *Motion* is therefore **DENIED**.

## B. **Applicability of the Fourth Amendment**

The First Circuit has held that "the Fourth Amendment does not apply to activities of the United States against aliens in international waters." United States v. Bravo, 489 F.3d 1, 8 (1st Cir. 2007) (citing United States v. Verdugo-Urquidez, 494 U.S. 259, 267 (1990)); *see also* United States v. Vilches-Navarrete, 523 F.3d 1, 13 (1st Cir. 2008); United States v. Diaz-Jaramillo, 2022 WL 17404925, at *5 (D.P.R. 2022); United States v. Taborda-Reales, 2021 WL 1565538, at *2 (D.P.R. 2021). In this case, the search and seizure at issue took place in international waters, and the indictment charges Defendant with being an "alien" as defined by 8 U.S.C. § 1101(a)(3). (Docket Nos. 8 at 1 and 23 at 2). Defendant does not dispute the allegation that he is an alien. As such, he has not shown that the Fourth Amendment applied to him at the time of the boarding.

It is true that aliens may receive Fourth Amendment protection "when they have come within the territory of the United States and developed substantial connections with this country." Verdugo-Urquidez, 494 U.S. at 271; *see also* Vilches-Navarrete, 523 F.3d. at 13. But this rule is inapplicable to the facts in this case. The boarding at issue took place outside the United States, in international waters. Moreover, Defendant claims neither residence in, nor a substantial connection to, the United States. *Cf.*

Criminal No. 23-264 (RAM)                                                    7

Taborda-Reales, 2021 WL 1565538, at *2 (denying Fourth Amendment claim where defendant did not allege United States residence or a "substantial connection").

Because Defendant has not shown that the Fourth Amendment protected him when his vessel was boarded, he cannot meet his burden of showing the Government violated his Fourth Amendment rights. *See* United States v. Rheault, 561 F.3d 55, 58-59, 61 (1st Cir. 2009) (finding defendant failed to meet burden of showing Fourth Amendment violation).

### C. Alleged Violations of Domestic and International Law

Even if the Fourth Amendment applied, Defendant fails to show the boarding violated the Fourth Amendment. Defendant argues the boarding of his vessel exceeded the USCG's authority under 14 U.S.C. § 89(a), ignored USCG regulations, and violated international law. (Docket No. 23 at 4). He claims the USCG may not board foreign vessels in international waters and that the USCG lacked evidence that his vessel was stateless. Id. at 4-5. However, even if Defendant is correct, these reasons are insufficient to establish there was a Fourth Amendment violation.

In United States v. Hensel, the First Circuit considered a nearly identical argument: that the USCG exceeded its § 89(a) authority, breached regulations, and contravened international law by searching a foreign vessel in international waters -- and that

such violations made the search unreasonable under the Fourth Amendment. 699 F.2d 18, 26-27 (1st Cir. 1983). The First Circuit assumed *arguendo* that the USCG **had** violated domestic and international law but nevertheless concluded there was no Fourth Amendment violation. Id. at 29. It reasoned that the domestic and international laws at issue "were designed not to protect the privacy rights of ship captains, but rather to protect the rights of foreign sovereigns." Id. at 30.

The same principle applies in this case. The prohibition on searching foreign ships in international waters is designed to protect the interests of **nations**, not **individuals**. Id. Even if the USCG violated domestic or international law by boarding Defendant's vessel without adequate grounds to consider it stateless, that reason would be insufficient under the Fourth Amendment to exclude the evidence obtained from such boarding.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's *Motion to Suppress* at Docket No. 23 is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of December 2023.

                                                    s/Raúl M. Arias-Marxuach
                                                    UNITED STATES DISTRICT JUDGE